MARIE GROSS et al., Respondents, v. CHRYSLER SALES CORPORATION, Appellant.

First Department, March 12, 1943.

*Walter L. Glenney* of counsel (*Glenney, Mathews & Hampton*, attorneys), for appellant.

*Harry Zeitlan* of counsel (*George Moskowitz* with him on the brief; *Emerin I. Goldberger*, attorney), for respondents.

CALLAHAN, J. Plaintiff-wife was injured on July 14, 1939, when she fell down a flight of four steps in a building maintained by defendant at the New York World's Fair. The trial court advised the jury over defendant's objection that it might find negligence based upon the violation of an ordinance adopted by the Board of Estimate and Apportionment of the City of New York and approved by the directors of New York World's Fair 1939 Incorporated pursuant to the authority conferred by section 3 of chapter 544 of the Laws of 1936. This ordinance was known as the " New York World's Fair 1939 Incorporated Building Code." Section 6.4.11 thereof was entitled " Handrails in Required Stairways." It provided that " Required

exit stairs '' should comply with certain requirements, and then further provided: '' When the width of a flight of stairs serving as a means of egress is 88 inches or more an intermediate hand-rail shall be provided. This hand-rail shall be continuous between landings, shall be substantially supported and shall terminate at the upper end in a newel or standard at least 6 feet high. Intermediate hand-rails may be omitted for stairs having a width greater than 88 inches provided the effective width of the stair is deemed to be 66 inches or less.''

It appeared that the stairway involved in the present accident was more than eighty-eight inches wide. It was actually from nine to ten feet wide and there was no intermediate or central hand-rail. The court charged the jury that it might determine whether there had been a violation of the aforesaid Building Code with respect to required railings, and permitted the jury to consider such violation in determining whether it found negligence.

Upon the present record we deem that this was error. The flight of stairs in question was wholly within a room and was not part of any exit from a room, floor or building. It was one of two terminals of a series of ramps or walks which rose gradually from the floor and led to a place of vantage from which visitors could see an exhibit known as '' The Miracle Car.'' This construction has been referred to as an '' arena,'' or '' amphitheatre.'' It was in fact merely a series of raised circular foot-paths on which visitors stood in order to see an exhibit. The high point of the rear of the arena was about six feet. From this high point there were cross-walks running down toward the exhibit and several rows of walks radiating therefrom. All of these walks were separated by railings and the spectators stood behind these railings. On each side of the high point the ramp had an offshoot or walk which declined gradually until it reached a flight of four steps. One of these was the flight of steps at which the accident occurred. These steps merely led down to the floor level. There was no enclosure whatever of the arena or amphitheatre. The whole thing was erected in the open in a larger room. We fail to see how stairs of this nature could be considered either '' required exit stairs,'' or a '' means of egress '' within the Building Code.

Examination of this Building Code as a whole supports the view that section 6.4.11 is not applicable to the present situation. The section is a subdivision of article 6 of the Code. Article 6 is entitled '' Means Of Egress.'' It contains general provisions that every structure erected at the Fair shall have

means of egress consisting of " doorways, interior stairways, horizontal exits, ramps, escalators or party wall balconies ", including necessary hallways. It would seem clear that " interior stairways," as used here, meant stairways between floors. The article appears to relate generally to means of egress from buildings or enclosures, for it has various headings such as " Required Doorways From Rooms," " Required Exits From the Ground Floor," " Required Exits From Floor Areas," etc.

Reference to the definitions shows that a " Stair Exit " is defined (§ 1.65) as a direct connection of any floor area to a stairway. A " Floor Area " is defined (§ 1.30) as " any floor space within a story of a structure enclosed on all sides by either exterior walls, fire walls, or fire partitions." It would seem clear, therefore, that the arena in question, being unenclosed, is not a " floor area," and the flight of steps where this accident happened was not a " stair exit."

As to the meaning of " required " stairway, we find that the third paragraph of section 6.4.1 provides: " The aggregate width of required stairs in any story of a structure shall be sufficient to accommodate at one time the total number of persons occupying or permitted to occupy the floor area served by such stairs," etc. The use of the phrase " floor area " would indicate that " required " stairs meant those serving enclosed rooms, or floors, or buildings.

Furthermore, we find by comparison with the general Building Code of New York City (Administrative Code of the City of New York, § C26–292.0, subd. 1, L. 1937, ch. 929 [former Building Code, ch. 5, art. 8, § 153, subd. 6, New York Code of Ordinances]) that a provision identical with section 6.4.11 of the World's Fair Code is contained therein. It appears clearly that the earlier ordinance applied only to stairways which were used as means of egress from rooms, floors or buildings, and not to an interior flight of the present nature leading from one level to another within a room.

If any broader scope was intended to be given to section 6.4.11 of the World's Fair Building Code than that which we now ascribe, we cannot ascertain that fact from this record, or from an examination of the statute itself.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

MARTIN, P. J., UNTERMYER, DORE and COHN, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellant to abide the event.